## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JESSIE TERRELL RADFORD                                             PLAINTIFF
ADC #655432

V.                              No. 4:21-CV-00140-BRW-JTR

MOTHERSHED, Sergeant,
Varner Supermax Unit, *et al*.                                    DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States
District Judge Bill Wilson. You may file written objections to all or part of this
Recommendation. If you do so, those objections must: (1) specifically explain the
factual and/or legal basis for your objection; and (2) be received by the Clerk of this
Court within fourteen (14) days of the date of this Recommendation. If you do not
file objections, Judge Wilson can adopt this Recommendation without
independently reviewing all of the evidence in the record. By not objecting, you may
waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Jessie Terrell Radford ("Radford") is an inmate in the Varner
Supermax Unit ("VSM") of the Arkansas Division of Correction ("ADC"). In his
*pro se* § 1983 Complaint (*Doc. 2*), Affidavit (*Doc. 8*), and Addendums (*Docs. 9-11*),
he alleges that Defendants Sergeant Mothershed, Major Carroll, ADC Classification

Committee staffer Ms. Washington, Hearing Officer Keith Waddle, and Deputy Warden James Shipman (collectively "Defendants") engaged in various actions that violated his constitutional rights. Specifically, he alleges that, on August 27, 2020, Defendants ordered him to report to work in the prison kitchen, alongside other inmates who had tested positive for Covid-19. *Doc. 2 at 5-6.* Thereafter, Radford refused to report to work in the kitchen because it was an unsafe work environment. *Doc. 2 at 5-9.*[1]

Based on his refusal to work, Radford alleges he was convicted of false disciplinary violations, "without evidence," by Defendant Hearing Officer Keith Waddle ("Waddle"). As punishment, his classification level was reduced and his prison privileges were suspended for 45 days. *Id.; Doc. 2 at 41.* Finally, Radford alleges that Defendants Governor Asa Hutchinson ("Hutchinson"), and ADC Director Dexter Payne ("Payne") were negligent in their duty to protect Radford's health and safety from Covid-19 and to protect his constitutional rights. *Id. at 14-15; Doc. 9 at 1.*

According to Radford, those actions by the various Defendants violated his constitutional rights to due process, equal protection, his right to be free from cruel and unusual punishment, and his right to be free from slavery. *Id.*

---

[1] Radford also makes the far-fetched claim that, by forcing him to work in the kitchen for less than the minimum wage, Defendants violated his right to be "free from slavery." *Id.*

At the screening stage, Radford's claims against Governor Hutchinson and ADC Director Payne were dismissed, without prejudice. *Docs. 14 & 16*. Radford's slavery and equal protection claims were dismissed against all Defendants, with prejudice. *Id*. Thus, Radford's *only remaining claim* is that on or around August 27, 2020, Defendants failed to protect him from Covid by recklessly and knowingly requiring him to work in the prison's kitchen alongside inmates who had tested positive for that virus. *Id*.[2]

Defendants have now filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts arguing that Radford's failure to protect claim must be dismissed, without prejudice, because he did not exhaust his administrative remedies on that claim before he initiated this action. *Docs. 33-35*.[3] Defendants' Motion for Summary Judgment is supported by the Declaration of ADC

---

[2] Radford's pleadings name Sergeant Mothershed, Major Carroll, ADC Classification Committee staffer Ms. Washington, Hearing Officer Keith Waddle, and Deputy Warden James Shipman as the Defendants who were responsible for requiring him to work in the kitchen on August 27, 2020, and, in doing so, failed to protect him from Covid.

[3] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

Inmate Grievance Coordinator Terri Grigsby Brown, a copy of ADC Administrative Directive 19-34, and Radford's relevant grievances. *Docs. 33-2, 33-3, & 33-4*.

Radford has filed a Response in Opposition to the Motion (*Doc. 37*) and a separate Response to Defendant's Statement of Undisputed Facts (*Doc. 38*).

## II. Discussion

### A.   To Fully and Properly Exhaust His Administrative Remedies, Radford was required to Comply with the ADC's Policies, Directives and Rules Governing Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA also requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete

the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,* 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, Radford must comply with the ADC's exhaustion requirements before he can properly bring those claims in a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, as to each claim, a prisoner must: (1) "specifically name each individual involved" with the problem or issue; (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See Doc. 33-1*, ADC Adm. Dir. ("AD") 19-34, § IV(C)(4), (D)(2), & (E)(2). The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. 1 ("Briefly state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or

she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Thus, with respect to his claims against Defendants, Radford was required to fully and properly exhaust the ADC's three-step administrative grievance process. *Id.* at §§ IV(D)-(G). This required him to: (1) submit a "Step One" informal resolution raising his claims and naming each Defendant, within fifteen (15) working days of the incident; (2) initiate a "Step Two" formal grievance within three (3) working days of receiving an unsatisfactory response to his Step One informal resolution; raising his claims with the Warden; and (3) initiate a "Step Three" appeal to the ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's Decision on each of his grievances. *Id*.

## B.    The Undisputed Material Facts

The following material facts are undisputed:

6

1.      Step One of the ADC grievance policy requires an inmate to submit an informal resolution within 15 calendar days after the incident giving rise to the grieved matter. *Doc. 35 at 2*; *AD 19-34* at § (IV)(E)(1).

2.      Radford's only *remaining* claim is that, on or around August 27, 2020, Defendants recklessly and knowingly required him to work in the prison's kitchen alongside inmates who had tested positive for Covid-19. *Docs. 14, 16*.

3.      On January 26, 2021, *five months after the incident*, Radford submitted an informal resolution complaining that *only Major Carroll* "forced [Radford] to work in the kitchen among other sick inmates [who] . . . tested positive for Covid." Radford attached a copy of this informal resolution to his Response In Opposition to Defendants' Motion for Summary Judgment. *Doc. 37 at 7*.

4.      A staff member responded to Radford's informal resolution on January 29, 2021. The response stated that all inmates who test positive for Covid are placed in quarantine until "quarantine is lifted." *Doc. 37 at 7*.

5.      After receiving this response, Radford initiated a "Step Two" Formal Grievance, which he dated "1/29/21." On the informal resolution/grievance form, he noted that the staff member response to his informal resolution did not resolve the problem. *See Doc. 37 at 7*.

6.      The lower portion of the informal resolution/grievance form was *not* signed by a staff member or assigned a grievance number. *See Doc. 37 at 7*. It is also

undisputed that: (a) Radford did *not* receive a written Step Two decision from the VSM Warden; and (b) Radford did *not* file a Step Three appeal after failing to receive a Step Two decision on the grievance he initiated on January 29, 2021.

7.      In Radford's Response to Defendants' Motion for Summary Judgment, he contends that the staff member to whom he gave the completed grievance form (*Doc. 37 at 7*) failed to process it, and allegedly threw it away. *Doc. 38 at 2*. As a result, Radford contends he never received a response from the VSM Warden, who decides all Step Two grievances.

8.      Radford argues that, because he did not receive a Step Two decision from the VSM Warden, he was relieved of his obligation to file a Step Three appeal. Radford's position is in *direct conflict* with the ADC's grievance procedure which explicitly required him to file a timely Step Three appeal after he did not receive a Step Two response from the VSM Warden within 20 working days from January 29, 2021, the date Radford initiated the Grievance. *See* AD 19-34 at § (IV)(F)(9).

9.      In her Declaration, Terri Grigsby Brown ("Brown"), the ADC's Inmate Grievance Coordinator, states that she reviewed Radford's grievance file and found he did *not* exhaust *any grievances* alleging a complaint about anyone exposing him to Covid-19 before, during, or after August of 2020. *Doc. 33-2 at 4*.

10.     Brown states that, on April 20, 2020, Radford initiated and later fully exhausted grievance VSM-20-01075, which alleged he was not being provided with

a Covid mask. *Doc. 9 at 5-8*. None of the Defendants in this action are identified in VSM-20-01075, which Radford initiated several months *before* the alleged August 27, 2020 incident giving rise to the failure to protect claim he has asserted against Defendants in this action. *Doc. 9 at 5*.[4] Accordingly, VSM-20-01075 is irrelevant to the exhaustion issue now before the Court.

11.      Brown states that, between August 1, 2020, and December 31, 2020, Radford filed two grievances: (a) on September 14, 2020, he filed VSM-20-02405 complaining about sewage water in his cell (*Doc. 33-3*); and (b) on October 1, 2020, he filed grievance VSM-20-02609 complaining that "Officer Smith" interfered with Radford's medical care. *Doc. 33-4*.

12.      Radford did not appeal the Warden's Step Two decision denying VSM-20-02405. While Radford fully exhausted grievance VSM-20-02609, he made no complaints in that grievance about anyone failing to protect him from being exposed to Covid. *Doc. 33-4 at 3*. Finally, Radford named only "Officer Smith" in VSM-20-02609, and he is *not* a Defendant in this action. *Doc. 33-2 at 4-5*; *Doc. 33-4*. Accordingly, VSM-20-02405 and VSM-20-02609 are not relevant to the exhaustion issue now before the Court.

---

[4] In responding to VSM-20-01075, ADC decision makers noted that Radford was currently being held in a single man cell; all officers having contact with him wore masks; and he would get a mask if set out on a gate pass or released to general population. *Doc. 9 at 7*.

13.     Brown states that, on January 4, 2021, Radford filed grievance VSM-21-00239, in which he complained about working in the kitchen for less than minimum wage. *Doc. 2 at 43*. In this grievance, Radford did not name or identify any of the Defendants in this action and the grievance itself raised no complaints about anyone exposing him to Covid. Accordingly, VSM-21-00239 is not relevant to the exhaustion issue now before the Court.

14.     Finally, Brown states that, on January 26, 2021, less than one month before Radford initiated this action, he filed the informal resolution/grievance he now relies on to claim that he exhausted his administrative remedies. *Doc. 37 at 2*. While this document raises Radford's current claim that he was exposed to Covid-19, Brown states that Radford did *not* fully and properly exhaust that grievance. *Doc. 33-2 at 4*.

## C.     Radford Failed to Fully and Properly Exhaust His Administrative Remedies on the Failure to Protect Claim He Has Asserted Against Defendants in this Action

Based on these Undisputed Facts, there are two fundamental procedural defects in Radford's January 26, 2021 informal resolution and his January 29, 2021 grievance. *See Doc. 37 at 7*. As a matter of law, each of those procedural defects is fatal to Radford's argument that he fully and properly exhausted his administrative remedies on his failure to protect claim:

> a.  *First*, a prisoner must submit an informal resolution "within fifteen (15) days after the occurrence of the incident with the date indicated beside

'Step 1: Informal Resolution.'" AD 19-34 at § (IV)(E)(1). Under this provision, Radford was required to submit an informal resolution raising his failure to protect claim and naming each Defendant, *within fifteen (15) days from the August 27, 2020 incident* giving rise to his claim. Because he waited until January 26, 2021 to submit the Step One informal resolution, it clearly was untimely. As a result of Radford's *five month delay* in filing the January 26, 2021 Step One informal resolution, he cannot rely on that document to establish that he *properly exhausted* his administrative remedies on the failure to protect claim he is asserting against Defendants in this action.

b. *Second*, the ADC grievance procedure specifies that "every inmate grievant shall receive a written . . . response to his or her grievance within 20 working days of receipt." AD 19-34 at § (IV)(F)(7). In the event the grievant has not received a response from the Step Two decision maker within the specified "20 working days," the inmate "may move to the next level of the process [Step Three] and appeal to the Chief Deputy/Deputy/Assistant Director Level. In this instance, the [Step Three] appeal must be filed no later than five (5) working days." AD 19-34 at § (IV)(F)(9). Radford *admits* that he did *not* receive a response to his Step Two grievance within twenty (20) working days after he submitted it on January 29, 2021.[5] As a result, he had five (5) working days to proceed to "the next level of the process," and file a Step Three appeal of the January 26, 2021 informal resolution/grievance with the "Chief Deputy/Deputy/Assistant Director." This meant his Step Three appeal had to be filed by March 5, 2021. Instead of filing the required Step Three appeal by the March 5, 2021 deadline, Radford initiated this action on February 24, 2021.

Accordingly, because Radford failed to timely and fully exhaust his administrative remedies on the failure to protect claim he has alleged against Defendants, their Motion for Summary Judgment should be granted.

---

[5] The "20 working days" expired on February 26, 2021.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 33*) be GRANTED, and Radford's Complaint be DISMISSED, WITHOUT PREJUDICE.

DATED this 20th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE